UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **LYNETTE M. GONZALES,**<br><br>      Plaintiff,<br><br>      vs.<br><br>**MICHAEL J. ASTRUE,**<br>**COMMISSIONER OF SOCIAL SECURITY,**<br><br>      Defendant. | Case No.: 11-cv-3963-YGR<br><br>**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |

Plaintiff Lynette Gonzales moves for summary judgment and remand for a new hearing following the partial denial of her claim for disability insurance benefits and supplemental security income under Title II and Title XVI of the Social Security Act ("SSA") (42 U.S.C. §§ 401-433, 1381-1383). Plaintiff seeks judicial review of the partial denial of benefits by Defendant Michael J. Astrue, Commissioner of Social Security ("Defendant" or "the Commissioner"). Plaintiff requests that the Court reverse the Commissioner's decision or, alternatively, remand her case for a new hearing. Plaintiff seeks review on the grounds that: (1) there is no substantial evidence to support the Administrative Law Judge's ("ALJ") designation of June 4, 2008, as the onset date of disability rather than her alleged date of September 1, 2006; and (2) the ALJ committed a legal error by failing to consult a medical expert to determine the onset date. Defendant opposes the motion and cross-moves for summary judgment.

Plaintiff filed her Motion for Summary Judgment on March 20, 2012. (Dkt. No. 24 ["Motion"].) On April 24, 2012, Defendant filed his Cross-Motion for Summary Judgment. (Dkt.

No. 28 ["Cross-Motion"].)  Plaintiff filed her Reply and Opposition to the Cross-Motion on May 7, 2012.  (Dkt. No. 29 ["Reply"].)

Having carefully considered the papers submitted and the pleadings in this action, and the administrative record, and for the reasons set forth below, the Court hereby **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Cross-Motion for Summary Judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

On January 9, 2007, Plaintiff filed for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits alleging that she became disabled on September 1, 2006.  (Record at 97.)[1]  Plaintiff alleged that she became unable to work on September 1, 2006, at age 35, due to her bipolar disorder and back problems.  (*Id.* at 206, 236.)  Plaintiff previously worked in retail sales as a stocking clerk, a warehouse worker, and a customer service representative.  (*Id.* at 237.)[2]

The Commissioner denied Plaintiff's claims in his initial determination on July 12, 2007.  (Record at 113-20.)  Plaintiff requested and was denied reconsideration on August 31, 2007.  (Record at 97.)  Plaintiff requested a *de novo* hearing and the matter was assigned to ALJ Randolph Schum.  (Record at 97.)  On December 29, 2008, the ALJ conducted an oral hearing.  Plaintiff appeared and testified before the ALJ.  The ALJ also took oral testimony from Joel Greenberg, a vocational expert.  On February 11, 2009, the ALJ issued an unfavorable decision finding that: (1) Plaintiff was not "disabled" under the SSA; and (2) that claimant's substance use disorders were a contributing factor material to the determination of disability.  (Record at 108.)

Plaintiff then requested review of the ALJ's decision by the Appeals Council.  The Appeals Council vacated the ALJ's decision and remanded the case to him for further proceedings in its

---

[1] While the Commissioner states in his brief that Plaintiff applied for benefits in April of 2007, the record indicates that the filing date was January 9, 2007.  (Record at 20, 97.)

[2] Plaintiff's earnings records show that she had sufficient quarters of coverage to be covered by disability insurance benefits through December 31, 2006.  (Record at 11.)  In order to receive disability insurance benefits, she must show that she was disabled on or before December 31, 2006, and for a period of 12 months prior.  42 U.S.C. § 423(c)(1); 20 C.F.R. §§ 404.131, 404.1509.  Thus the date of onset determines both when any SSI benefits commence, as well as when and whether Plaintiff qualifies for DIB.  The Court further notes that Plaintiff's later application for SSI benefits was granted during the pending of her appeal, so that she began receiving benefits on February 10, 2009.  The appeal herein would therefore be limited to determining whether her onset date, and entitlement to benefits, should have been earlier.

decision of May 1, 2009.  (Record at 110.)  The Appeals Council found a number of issues requiring remand, including: (1) failure to consider whether claimant's diagnoses of bipolar disorder, post-traumatic stress disorder, and major depression were impairments, and whether other diagnoses of personality disorder and anxiety disorder were severe impairments; (2) failure to consider treating source opinions from Katie Johnson, MFT ("Johnson") and Yasin Mansoor, M.D. ("Mansoor"), indicating that claimant had marked and extreme limitations that would exclude her from usual and competitive work activities; and (3) finding that claimant's "substance use disorders" were contributing factors to the determination of disability without first finding that claimant was, in fact, disabled.  (Record at 110-11.)  With respect to the substance use disorders, the Appeals Council instructed the ALJ that, on remand, he must evaluate claimant's mental impairments following the requirements of the governing regulations and laws, following the steps of the process in order.  The Appeal's Council's decision stated, in relevant part:

> In accordance with Public Law 104-121, the [ALJ] will determine whether the claimant is under a disability taking into consideration all of her impairments, including her drug addiction and/or alcoholism (DAA), following the sequential evaluation process outlined in 20 CFR 404.1520 and 416.920.  [¶] If the claimant is found not disabled, a determination as to whether the DAA is material is not needed.  [¶] If the claimant is found disabled, a determination as to whether the DAA is material is necessary.  In considering whether DAA is material, decide: (1) which of the current physical and mental limitations upon which the claimant was found disabled would remain if she stopped using drugs or alcohol[;] and (2) again in accordance with the sequential evaluation process, whether the remaining limitations would still be disabling

(*Id.* at 111.)

On remand from the Appeals Council, the ALJ held an additional hearing on August 5, 2009.  (Record at 11.)  He heard oral testimony from Plaintiff and from a vocational expert, Susan T. Miranda.[3]  Miranda opined that, based upon the limitations presented to her by the ALJ, Plaintiff could not return to past, relevant work.  (Record at 30, 57.)[4]  On January 29, 2010, the ALJ issued a

---

[3] The record variously lists the expert's name as "Moranda" and "Miranda."  (See, e.g., Record at 11, 57.)

[4] Plaintiff's attorney in the proceedings before the ALJ elicited testimony from Plaintiff regarding her history and symptoms.  (Record at 42-55.)  The only questions the ALJ had for Plaintiff during the hearing focused on when she last used alcohol and marijuana, to which she replied that she had not had alcohol since 2004 and her last marijuana use was in "June of '08."  (Record at 56.)

3

partially favorable decision finding Plaintiff to be disabled for the period after June 4, 2008, but not before. (*Id.* at 21.) The ALJ's decision indicated that he had considered psychological assessments by Dr. Rebecca Gladding and Dr. Faith Tobias, physical assessments by Dr. Matthew Mitchell, and the vocational testimony by Greenberg and Miranda. (*Id.* at 16.)[5]

In his January 29, 2010 decision, the ALJ determined that Plaintiff was disabled within the meaning of the SSA beginning on June 4, 2008. The ALJ found that, as of the onset date claimed in Plaintiff's application for benefits, September 1, 2006, Plaintiff had the following "severe impairments": personality disorder, anxiety disorder, lumbar degenerative disc disease, and subjective loss of feeling in her left hand. (*Id.* at 14.) However, the ALJ found that, "until June 2008, when the claimant stopped using drugs, her credibility as to her symptoms is so reduced by her drug use and false statements that the evidence is not sufficient to find that the claimant was disabled prior to that time." (Record at 17.) While Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms . . . the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible prior to June 4, 2008." (*Id.* at 16.) The ALJ found that the medical records established Plaintiff was receiving treatment from August 2004 to December 2006 and beyond, but the "general assessment of the claimant in August and September 2006 is not significantly different – that is, the assessment of the claimant while she was working is not different from the assessment right after she was fired." (Record at 17.) The ALJ noted that a number of assessments and treating notes for 2008 and later indicated that Plaintiff's mental health symptoms had worsened, but concluded that "the later opinions do not appear to relate back to any date prior to (or coincident with) the date last insured." (Record at 17.) The ALJ concluded that "[p]rior to June 4, 2008. . . [t]he claimant's mental impairments do not satisfy" the degree of limitation criteria for a listed mental disorder, while after June 4, 2008, she did. (Record at 14.)

In his January 29, 2010 decision, the ALJ specifically declined to assess the materiality of Plaintiff's drug use to his disability determination. Instead, he found that since Plaintiff was not disabled prior to June 2008, when she testified that her marijuana use stopped, he did not need to

---

[5] The ALJ expressly declined to consider Johnson's opinion. (Record at 61-64.) It is unclear whether he considered Mansoor's opinion.

4

reach the question of whether drug use was material to her disability.  (Record at 17 ["there is no analysis of the contribution the drug use may have had on the continuing symptoms. . . [a]s I do not find that the claimant was disabled by her symptoms at any time prior to June 2008, I do not further consider the materiality of the claimant's drug use"].)

Plaintiff requested additional review by the Appeals Council, however such request was denied on June 10, 2011.  (Record at 1.)  Plaintiff filed a timely appeal to this Court.

**I.    APPLICABLE LEGAL STANDARDS**

A court may set aside a Commissioner's final decision denying disability benefits only if such decision is not supported by substantial evidence or is based on legal error.  42 U.S.C. § 405(g); *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  "Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion."  *Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005).  It is defined as "more than a mere scintilla but less than a preponderance."  *Tackett*, 180 F.3d at 1098 (internal quotations omitted).  The Court must consider the entire record, weighing both the evidence that supporting and contradicting the Commissioner's conclusion.  *Id.*  Even when a decision is supported by substantial evidence in the record, it "should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision."  *Benitez v. Califano*, 573 F.2d 653, 655 (9th Cir. 1978) (citing *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968)).

Under the SSA's regulations, the Commissioner must apply a five-step sequential process to evaluate a disability benefits claim.[6]  The claimant bears the burden of proof in steps one through

---

[6] The five steps of the inquiry are:
1. Is the claimant presently working in a substantially gainful activity?  If so, then the claimant is not disabled within the meaning of the Social Security Act.  If not, proceed to step two. See 20 C.F.R. § 416.920(b).
2. Is the claimant's impairment severe? If so, proceed to step three.  If not, then the claimant is not disabled. See 20 C.F.R. § 416.920(c).
3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Subpart P, Appendix 1? If so, then the claimant is disabled.  If not, proceed to step four. See 20 C.F.R. § 416.920(d).
4. Is the claimant able to do any work that he or she has done in the past?  If so, then the claimant is not disabled.  If not, proceed to step five. See 20 C.F.R. § 416.920(e).
5. Is the claimant able to do any other work? If so, then the claimant is not disabled.  If not, then the claimant is disabled. See 20 C.F.R. § 416.920(f).

four. *Bustamante v. Massanari*, 262 F.3d 949, 953-954 (9th Cir. 2001). The burden then shifts to the Commissioner in step five. *Id.* at 954. Additionally, an ALJ has "an affirmative duty to assist the claimant in developing the record at every step of the inquiry." *Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001).

A finding that a claimant is "disabled" under the five-step inquiry does not result in automatic qualification for benefits. Under additional provisions of the SSA, a claimant "shall not be considered disabled for the purposes of [receiving benefits] if alcoholism or drug addiction [is] a contributing material factor to the Commissioner's determination that the individual is disabled." 42 U.S.C. § 1382c(a)(3)(J); *see also Bustamante*, 262 F.3d at 954. The SSA's implementing regulations state: "[i]f we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(a), 416.935(a); *Bustamante*, 262 F.3d at 954. The Ninth Circuit has held that it is error for the ALJ to consider whether the claimant's impairments are the product of drug or alcohol abuse *prior* to making a disability determination under the five-step test. *Bustamante*, 262 F.3d at 954-55.

If the Commissioner finds that a claimant is "disabled," he must also determine the onset date of disability. Under the terms of the SSA, the onset date of disability is the date on which a claimant is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A).

## II. DISCUSSION

The issue for review by the Court is whether the ALJ erred when he failed to elicit a medical expert opinion with respect to Plaintiff's date of disability onset, thereby denying Plaintiff disability benefits for the period between Plaintiff's alleged date of onset and the date of onset in his decision. Because the Court concludes that the evidence before the ALJ was not conclusive as to the onset date, the ALJ was required to consult a medical expert. His failure to do so requires that the decision be reversed and remanded to the Commissioner for proceedings consistent with

this Court's decision.  *See Armstrong,* 160 F.3d at 589 (ALJ's failure to call medical expert before inferring an onset date despite ambiguous record was reversible error).

The "onset date" is the point at which Plaintiff's impairments became so severe as to be "disabling" within the meaning of the SSA.  42 U.S.C. § 1382c(a)(3)(A).  Where the claimant challenges the ALJ's onset date determination, as here, the claimant bears the burden of proof. *Armstrong v. Commissioner of Social Sec. Admin.,* 160 F.3d 587, 589 (9th Cir. 1998).  However, as with the other stages of the disability determination, the ALJ has a duty to assist in developing the record to establish the evidentiary basis for the onset date.  *Id.* (citing *DeLorme v. Sullivan*, 924 F.2d 841, 849 (N.D. Cal. 1991)).

The Ninth Circuit has endorsed Social Security Ruling 83-20 ("SSR 83-20") regarding determination of date of onset which states, in part:

> With slowly progressive impairments, it is sometimes impossible to obtain medical evidence establishing the precise date an impairment became disabling. . . . [¶]  How long the disease may be determined to have existed at a disabling level of severity depends on an informed judgment of the facts in a particular case. *This judgment, however, must have a legitimate medical basis.  At the hearing, the administrative law judge should call on the services of a medical advisor when onset must be inferred.*

*Quarles v. Barnhart*, 178 F. Supp. 2d 1089, 1096 (N.D. Cal. 2001) (emphasis supplied) (quoting SSR 83-20 and citing *Armstrong,* 160 F.3d at 589–90, *Morgan v. Sullivan*, 945 F.2d 1079, 1082 (9th Cir. 1991) (reversing in part an ALJ's determination of the onset date of mental disorders without the assistance of a medical expert); and *DeLorme,* 924 F.2d at 848).  In the context of SSR 83-20, "should" means "must."  *Armstrong,* 160 F.3d at 589-90; *DeLorme,* 924 F.2d at 848.  Thus, failure to call on a medical expert to assist in determining the date of onset when onset is not otherwise established clearly in the record is legal error.  *Armstrong,* 160 F.3d at 589-90; *Quarles* 178 F. Supp. 2d at 1096.  "[R]egardless of how careful and well-supported the ALJ's inference may be . . . [w]here the evidence is ambiguous and there are indications that the claimant's mental condition was disabling prior to the [last date insured], then a medical expert must be called." *Quarles*, 178 F. Supp. 2d at 1096-97; *see also Morgan*, 945 F.2d at 1082.

Here, the evidence regarding Plaintiff's onset date is uncertain. The record supports a finding that Plaintiff had severe mental impairments that may have been disabling prior to June 2008, and indeed the ALJ found that Plaintiff did have severe mental impairments as of her alleged onset date. (Record at 14.) However, the ALJ's finding that Plaintiff was not disabled until June 4, 2008, does not rely on any medical evidence to that effect. The ALJ cites no evidence of a change in severity or other marker indicating exactly when Plaintiff's various impairments became disabling, or how the severity of those symptoms differed between September 1, 2006, and June 4, 2008.

The ALJ relies on the expert reports of Drs. Gladding and Tobias for his findings. However, those expert reports *themselves* predate the ALJ's selected onset date by a year. Dr. Gladding, who began counseling Plaintiff in 2004, provided a report in June of 2007. (*Id.* at 16, 402-05.) Dr. Tobias, who examined Plaintiff at the request of the Social Security Administration, likewise provided a report in June of 2007. (Record at 415.) The reports, along with the treatment notes in the record, all indicate that Plaintiff has a long history of mental illness and treatment. Dr. Gladding's report indicated that Plaintiff had bipolar disorder and post-traumatic distress disorder. (*Id.* at 16, 402-05.) Dr. Gladding's treatment notes from visits prior to June of 2007 indicate much the same diagnoses and symptoms. (Record 398-401.) The report by Dr. Tobias indicated diagnoses of major depressive disorder, cannabis abuse, and "rule out" diagnosis of bipolar disorder. (Record at 415.) His report noted that Plaintiff had "compromised" insight and judgment, as well as "moderate to markedly depressed and anxious" symptoms. (Record at 415.) (*Id.*)

Other treatment notes in the record show that Plaintiff was in outpatient treatment beginning as early as 1992. (Record at 629.) Plaintiff was diagnosed with bipolar disorder at least by 2004. (Record at 618, 620.) She was involuntarily hospitalized for psychiatric treatment in 2003. (*Id.*) She continued to receive outpatient treatment for mental illness and substance abuse. (Record at 17.) The record also shows that Plaintiff has a significant personal and familial history of mental

illness, suicide attempts, domestic violence, and childhood sexual abuse.[7] The record also indicates physical impairment due to ongoing pain from a back injury, as well as loss of sensation in Plaintiff's left hand.[8] Thus, the medical evidence in the record is at least ambiguous as to when Plaintiff's impairments became disabling.

Further, the ALJ did not rely on the medical evidence to select the onset date, but instead selected the June 4, 2008 date based upon Plaintiff's testimony that she had ceased using marijuana by that time. (Record 16-17.) Given the medical evidence in the record, the ALJ's failure seek an expert opinion as to the date of onset was contrary to clearly established law. *Armstrong,* 160 F.3d at 589-90; *Morgan*, 945 F.2d at 1082; *Quarles* 178 F. Supp. 2d at 1096.

While not specifically addressing the issue of legal error for failure to call on an expert, Defendant argues that the ALJ's onset date is supported by substantial evidence in the record. Specifically, Defendant contends that the ALJ provided sufficient evidence for his selection of the June 2008 onset date based on: (1) testimony by vocational experts; and (2) an adverse determination of Plaintiff's credibility prior to that date.

First, the testimony of the vocational experts does not substitute for medical evidence. Nothing in SSR 83-20 or the cases interpreting it suggests that the testimony of a vocational expert provides the "legitimate medical basis" sufficient to establish an onset date. *Armstrong,* 160 F.3d at 589-90; *Quarles* 178 F. Supp. 2d at 1096. Moreover, the vocational experts did not offer opinions as to the severity of Plaintiff's symptoms, but instead responded to hypotheticals posed by the ALJ which required them to assume certain levels of severity and then say whether a claimant could perform past, relevant work or other types of jobs based on those assumptions.[9]

---

[7] Plaintiff attempted suicide in 1989 and 2003. (Record at 629.) She also has a history of abuse, trauma, and domestic violence. (*Id.* at 54, 629.) In addition, Plaintiff has a family history of bipolar disorder and domestic violence. (*Id.* at 633.) Several family members have attempted or committed suicide. (*Id.* at 55.)

[8] In February 2001, Plaintiff had an MRI on her lumbar spine that showed a mild bulge of the L4-5 disc. (*Id.* at 18, 76.) She also reported having a specific back injury that occurred around 2006 when working for Lucky's. (*Id.* at 76.) Plaintiff has also experienced decreased sensation to touch in her left hand. (*Id.*)

[9] At the original hearing on December 29, 2008, Greenberg determined that Plaintiff had the residual functional capacity to perform her past work as a warehouse worker/order filler. (Record at 19, 83-84.) At the hearing on August 6, 2009, Miranda found that there were no jobs suitable based upon Plaintiff's restrictions. (Record at 19, 58-60.)

9

Second, as to the adverse credibility determination, the ALJ's disregard of Plaintiff's own testimony about her impairment and symptoms cannot, on its own, create a basis for his own finding of an onset date.[10] The ALJ based his selected onset date on findings that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [her] symptoms [were] not credible prior to June 4, 2008, to the extent they are inconsistent with the residual functional capacity assessment." (Record at 16.) The ALJ determined that Plaintiff's overall credibility was poor because she originally reported leaving her job due to her disability in her application form, but later told an examining doctor that she had been fired for using a credit card a customer left on the counter. (Record at 16, 17.) The ALJ also found that Plaintiff was not credible specifically with regard to the severity of her symptoms until after June 2008, *i.e.* only after the point the ALJ believed that Plaintiff had stopped using drugs. (Record at 17, 18.) The Ninth Circuit has clearly stated that when the medical evidence is ambiguous as to the onset date, a medical expert must be called "regardless of how careful and well-supported the ALJ's inference may be." *Quarles*, 178 F. Supp. 2d at 1096-97. The ALJ is not relieved of this requirement because he found Plaintiff not credible.

In addition, the ALJ's use of Plaintiff's substance abuse history to determine the onset date here was inconsistent with the law. The only explanation the ALJ offered for the June 2008 onset date was Plaintiff's testimony that she had not used marijuana since that time. An ALJ may determine whether a claimant's substance abuse materially contributes to a disability, *only* after first determining the claimant to be disabled under the five-step disability analysis. 42 U.S.C. §

---

[10] Where the evidence in the record indicates that there is an underlying impairment that could reasonably be expected to produce the symptoms alleged, and there is no evidence of malingering, an ALJ can reject a claimant's testimony about the severity of her symptoms, "only by offering *specific, clear and convincing reasons* for doing so." *Lingenfelter v. Astrue,* 504 1028, 1036 (9th Cir. 2007) (emphasis added); see also *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints."). "[C]onflicting or inconsistent testimony concerning [substance] use can contribute to an adverse credibility finding" but it "cannot justify such a finding alone and without further corroboration or explanation." *See Robbins v. Social Sec. Admin.*, 466 F.3d 880, 884 (2006) (reversing and remanding because ALJ's finding that claimant's testimony regarding his alcohol abuse testimony was "equivocal" did not constitute substantial evidence to warrant adverse credibility finding). Here the ALJ did not use inconsistencies *about* drug use in Plaintiff's testimony to discount her credibility, but rather relied on the fact of the drug use itself to find her not credible. However, the Court need not reach the issue of the whether the ALJ properly rejected Plaintiff's testimony, as she did not assert the issue as a basis for the appeal herein.

10

1382c(a)(3)(J); *see Parra v. Astrue*, 481 F.3d 742, 746-47 (9th Cir. 2007). The ALJ must first conduct the five-step inquiry "without attempting to determine the impact of [the claimant's substance use] on [her] mental impairments." *Id.* Here, the ALJ noted that the Plaintiff "testified to continued marijuana use through June 2008 and [] reported such use to Dr. Tobias []. Dr. Gladding apparently was aware of claimant's marijuana use, but offered no analysis of the effect of the drug use on the claimant's symptoms." (Record at 16.) The ALJ then concluded that Plaintiff was not credible until after the date she testified she last used marijuana. (*Id.*) The ALJ, in effect, did an end-run around the five-step analysis. He acknowledged as much when he stated in his decision that, because he found Plaintiff not credible for the period that she was using drugs, he did not need to reach the question of the materiality or contribution of that drug use to her symptoms. (Record at 17.)

### III. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Summary Judgment is **GRANTED**, and Defendants' Cross-Motion for Summary Judgment is **DENIED**. The matter is remanded for new hearing. The ALJ is directed to call a medical expert in assisting the determination of the onset date.

This Order terminates Dkt. Nos. 24 & 28.

**IT IS SO ORDERED.**

Dated: January 22, 2013

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**